**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angala Ann Alford, | No. CV-22-01687-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Angala Ann Alford's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Disability Insurance Benefits and Supplementary Security Income. (Doc. 1). The appeal is fully briefed, (Doc. 13, Doc. 14, Doc. 16). The Court will now rule.

## I.   BACKGROUND

The issue on appeal is whether the administrative law judge ("ALJ") committed harmful error in developing the record to support her mental health finding. (Doc. 13 at 1).

### a.  Factual Overview

Angala Ann Alford ("Claimant") filed an application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") in February of 2020. (*See* Doc. 11-3 at 16). She alleges that her disability began on April 1, 2017. (*See id.*). "Claimant met the insured status requirements for Title II benefits through September 30, 2020 . . . ." (*See* Doc. 13 at 2). Her claim was initially denied on April 23, 2020, and again upon reconsideration on November 17, 2020. (*See* Doc. 11-3 at 16). In

1   August of 2021, after a telephonic hearing, the ALJ denied the claim. (*See id.*, Doc. 13 at
2   1). The SSA Appeals Council later denied Claimant's request for a review of that decision
3   and adopted the ALJ's decision as the final decision of the agency. (*See* Doc. 13 at 2).
4   Claimant now appeals the ALJ's decision.

5                   **b.  The SSA's Five-Step Evaluation Process**

6           To qualify for social security benefits, a claimant must show she "is under a
7   disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically
8   determinable physical or mental impairment that prevents her from engaging "in any
9   substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process
10  for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1).
11  Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

12          At the first step, the ALJ determines whether the claimant is "doing substantial
13  gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial
14  gainful activity is work activity that is both "substantial," involving "significant physical
15  or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

16          At the second step, the ALJ considers the medical severity of the claimant's
17  impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically
18  determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe
19  impairment" is one which "significantly limits [the claimant's] physical or mental ability
20  to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and
21  aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

22          At the third step, the ALJ determines whether the claimant's impairment or
23  combination of impairments "meets or equals" an impairment listed in Appendix 1 to
24  Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.
25  *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual
26  functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a
27  claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the
28  claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related

symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c.  The ALJ's Application of the Factors

Looking at the first step, the ALJ found that "[C]laimant has not engaged in substantial gainful activity since April 1, 2017, the alleged onset date." (Doc. 11-3 at 19).

At the second step, the ALJ found that Claimant has seven severe impairments under 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c): mild impingement in left shoulder, epilepsy, asthma, major depressive disorder, unspecified adjustment disorder, posttraumatic stress disorder, and opioid dependence. (Doc. 11-3 at 19). The ALJ also found that Claimant has other non-severe impairments including benign essential hypertension and associated headaches without known end organ damage, phobias and a right wrist fracture. (*Id.*). These impairments were not severe, the ALJ found, "because they are either controlled with treatment, did not or will not last for twelve months during the period under consideration, and/or have not been alleged by the claimant to interfere with her ability to function." (*Id.*). Finally, the ALJ did not find the Claimant's allegation of a head injury credible because there was no medical evidence to establish the impairment, and "the claimant is repeatedly observed to demonstrate normal gait." (*Id.*).

At the third step, the ALJ found that Claimant "did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (*Id.*). She found no evidence that any single impairment, or combination of impairments were severe enough to meet or equal the criteria of a listed impairment. (*See id.* at 20). The ALJ examined the record, prior administrative findings ("PAMFs"), and medical expert opinions and did not find "the evidence as a whole supports such a finding." (*Id.*). In addition to finding no documented evidence to support a 1.18 listing, 3.02 listing, or 11.02 listing, the ALJ also found the Claimant's mental impairment failed to meet the criteria of listing 12.04, 12.06, or 12/15. (*Id.*). Specifically, the "paragraph B" criteria were not satisfied because "claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." (*Id.* at 21). Additionally, the "paragraph C" criteria were not met because "the claimant has not demonstrated her mental impairment is serious and persistent as defined . . . ." (*Id.*).

At the fourth step, the ALJ found that Claimant had the Residual Functional Capacity ("RFC") to perform light work with certain exceptions. (*Id.* at 22). She found that although the Claimant's impairments "could reasonably be expected to cause a number of symptoms she has alleged," there were "a number of inconsistencies" in the record. (*Id.* at 23–24). The ALJ found that discrepancies in statements Claimant made to previous examiners, treating sources, and while testifying, "diminish the persuasiveness of her subjective complaints." (*Id.* at 24). Thus, the ALJ found "claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely supported by the available evidence as a whole." (*Id.*). The ALJ found PAMFs regarding the Claimant's capability to do a limited range of light work persuasive because their findings "cited evidence that is supported by the record as a whole." (*Id.*). However, the ALJ did not find the PAMFs and opinions regarding the Claimant's mental status persuasive because "mental status evidence shows normal cognitive function repeatedly." (*Id.*). Based on the RFC, the ALJ found "the claimant is unable to perform past relevant work." (*Id.* at 26).

At step five, the ALJ found there were jobs that existed in significant numbers in

1    the national economy that Claimant could perform. (*Id.* at 27). Because Claimant could
2    perform a limited amount of the requirements of light work, the ALJ found, with the
3    assistance of a vocational expert, that Claimant could perform the jobs of shipping and
4    receiving weigher, lens matcher, produce weigher, and marker. (*Id.*). Consequently, the
5    ALJ found that Claimant was not disabled. (*See id.*).

6    **II.   LEGAL STANDARD**

7          This Court may not overturn the ALJ's denial of disability benefits absent legal error
8    or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).
9    Substantial evidence means "more than a scintilla ... but less than a preponderance."
10   *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is
11   "such relevant evidence as a reasonable mind might accept as adequate to support a
12   conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v.
13   Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard,
14   courts look at "an existing administrative record and ask[] whether it contains sufficient
15   evidence to support the [ALJ's] . . . factual determinations." *Biestek v. Berryhill*, 139 S.Ct.
16   1148, 1154 (2019). This Court "must consider the entire record as a whole, weighing both
17   the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and
18   may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting
19   *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws
20   inferences, resolves conflicts in medical testimony, and determines credibility, however.
21   *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d
22   1450, 1453 (9th Cir. 1984). Thus, this Court must affirm even when "the evidence admits
23   of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.
24   1984). The Court "review[s] only the reasons provided by the ALJ in the disability
25   determination and may not affirm the ALJ on a ground upon which he did not rely."
26   *Garrison*, 759 F.3d at 1010.

27         When specifically assessing DIB claims, the ALJ's inquiry is limited to determining
28   whether the claimant had a disability in the period between the alleged onset date and the

date last insured. One main source of evidence for this is medical records and testimony from or about this period. And a key piece of evidence is PAMFs. When looking at such PAMFs, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *See* 20 C.F.R § 404.1520c(a). When evaluating the persuasiveness of these findings the most important factors the ALJ will consider, and is required to articulate, are the supportability and consistency of the finding. *See id.* § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* at § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent … with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at § 404.1520c(c)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence[,]" however. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ is entitled to look to all parts of the record when assessing a treating physician's opinion. Beyond conflicting medical testimony, an ALJ can also reject such an opinion when there is a conflict between that opinion and a claimant's daily activity level. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Finally, "[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight" to give them. *Id.*

When evidence on the record is inconsistent, the ALJ may take additional actions including recontacting medical sources, requesting additional evidence, requesting that the Claimant undergo a consultive examination, or asking for more information. *See* 20 C.F.R. § 404.1520b(b)(2). However, an ALJ is not required to take any action and may determine disability based on the evidence provided. *See id.* at § 404.1520b(b)(1). Additionally, an ALJ should seek an expert opinion when they are required to interpret "raw medical data." *See Javier A. G. v. Saul*, No. SACV 19-2341 PVC, 2020 WL 6940042, at *10 (C.D. Cal. Nov. 25, 2020).

## III.    DISCUSSION

Claimant argues that the ALJ erred by failing to adequately develop the record to support her RFC findings on Claimant's mental impairments. (Doc. 13 at 4). She alleges the ALJ failed to provide sufficient evidence to explain the finding that the Claimant could perform simple work. (*See id.* at 6). Claimant also asserts that the ALJ failed to develop the record with a persuasive medical expert's opinion regarding Claimant's mental health. (*See id.* at 7).

### a.  Residual Functional Capacity Analysis

Claimant asserts that the ALJ failed to adequately support her decision that Claimant was limited to simple tasks. (*Id.* at 6). Claimant first contends that the ALJ failed to explain why the State Agency PAMFs were unpersuasive. (*Id.* at 5). This Court, however, finds the ALJ did provide specific and legitimate reasons, supported by substantial evidence, for finding these PAMFs unpersuasive.

For claims filed after March 27, 2017, the revised regulations govern how an ALJ assesses medical opinions and PAMFs. *See* 20 C.F.R. § 404.1520c(a). Under the revised regulations, this kind of evidence is not given more weight than other types of evidence. (*See id.*). PAMFs from Tawnya Brode, Psy.D, and J. Zeuss, M.D. suggest that Claimant should be limited to 1-2 step tasks. (Doc. 11-3 at 24). The ALJ found this was inconsistent with other evidence from the record, however. (*See id.*). She noted that other "mental status evidence shows normal cognitive function repeatedly." (*Id.*). Furthermore, the ALJ found Claimant's own testimony provided evidence that she was not limited to 1-2 step tasks. (*See id.*). Claimant reported that she "uses a computer, enjoys reading history, rode a bus to church prior to the pandemic, cares for her partner's son and assisted him with online schooling during the pandemic." (*Id.*). This contradicts the PAMFs. Consistency between PAMFs and the record as a whole is one of the two most important factors the ALJ considers when evaluating persuasiveness. *See* 20 C.F.R § 404.1520c(b)(2). Consequently, the ALJ was justified in relying on these inconsistencies as a basis for finding the PAMFs unpersuasive.

Claimant also contends that the ALJ's restriction to simple tasks was "inappropriately arbitrary." (Doc. 13 at 6). Claimant states that "[h]aving set aside the available guiding opinions/PAMFs, the ALJ should not have simply stated what the proper RFC limitation was without either a proper explanation or further development of the record with opinion evidence." (*Id.*). This, she contends, makes the decision "unclear." (*Id.*). This argument mischaracterizes the ALJ's analysis, however. The ALJ found "the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," to satisfy the "paragraph b" criteria. (Doc. 11-3 at 21). In her RFC analysis, the ALJ explained that the Claimant's RFC limitation "reflects the degree of limitations… found in the 'paragraph B' mental function analysis." (*Id.* at 22). Additionally, she cited PAMFs, medical records, and the Claimant's own testimony in her analysis of the Claimant's mental health.

Claimant specifically contends that the ALJ's findings on concentration, persistence, and pace were arbitrary. (Doc. 16 at 1-2). Claimant argues that because the PAMFs state that she is restricted to 1-2 step tasks, the ALJ's selection of simple tasks is inappropriate. (*See id.*). The ALJ had substantial evidence for her finding, however. In this area the ALJ found that Claimant is "reasonably more than mildly limited." (*See* Doc. 11-3 at 21).  To support this finding, the ALJ cited Claimant's own reports of daily activity including "the ability to shop, read, write and play video games." (*Id.*). Additionally, the ALJ cited mental status evidence that Claimant lacked cognitive defects and that Claimant has the "ability to direct attention and use decision-making strategies" to support her finding. (*See id.*). The ALJ's selection of simple tasks with certain limitations is consistent with this finding. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (finding a restriction to "simple work" proper where claimant was "moderately limited" in concentration, persistence, and pace).

In addition to supporting her RFC finding with her "paragraph b" analysis, the ALJ also conducted a "more detailed assessment of the areas of mental functioning" at step four. (*See id* at 22). As noted above, the ALJ cited to medical records from Claimant's different

office visits. (*See id.* at 23). Regarding the Claimant's seizures, the ALJ noted that Claimant reported taking medication that helped control her seizures and that she only has "breakthrough" seizures when she forgets to take her prescribed medication. (*See id.*). Additionally, the ALJ examined medical records regarding Claimant's psychiatric impairments and noted that the Claimant has been diagnosed with major depressive disorder, posttraumatic stress disorder, and adjustment disorder. (*See id.*). The ALJ cited three different medical reports showing the Claimant had "exhibited largely normal mental status findings," however. (*See id.*). The ALJ also examined medical reports stating that Claimant has polysubstance abuse and dependence. (*See id.*). She noted that Claimant is "now on a Suboxone program and in associated remission." (*See id.*). Based on these reports, the ALJ found "that there is a reasonable nexus between her impairments and her alleged symptoms…." (*See id.*).

The ALJ also noted that "the record reflects a number of inconsistencies in this case." First, Claimant's testimony regarding the nature of her seizures differed from what she reported to her treating physicians. (*See id.* at 24). Second, Claimant testified she had "serious memory problems," but the ALJ found "mental status evidence fails to support these allegations." (*See id.*). Third, Claimant testified that she flunked out of college but reported to examiners that she had a bachelor's degree. (*See id.*). Fourth, Claimant testified that she left her last job due to worsening symptoms but told treating sources she left in connection to a relapse. (*See id.*). Finally, the Claimant testified she has trouble balancing and has back pain but also testified to recently skateboarding. (*See id.*). Thus, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely supported by the available evidence as a whole." (*See id.*).

The ALJ cited her analysis at step three, which includes an examination of concentration, persistence, and pace limitations; PAMFs; medical reports; and the Claimant's testimony about her daily activities in her RFC finding. Consequently, this Court finds that the ALJ did substantially support and explain her RFC finding.

### b.  Development of the Record

Finally, Claimant contends that the ALJ failed to adequately develop the record. (Doc. 13 at 7). Claimant acknowledges that it is the ALJ's duty to determine the RFC. (*See id.*). However, she argues that because the ALJ found the PAMFs unpersuasive, "[t]he ALJ is proceeding without guidance." (*Id.* at 5). Therefore, Claimant contends that the ALJ should have solicited a persuasive opinion on the Claimant's mental status. (*See id.*). Claimant states "the ALJ is not allowed to use her own medical judgment in lieu of a medical expert." (*Id.* at 7). To support this contention, Claimant cited cases where an ALJ was required to seek a medical expert's opinion. (*See id.*). However, those cases are distinguishable from this case. Unlike those cases, the ALJ in this case did not interpret raw medical data to determine the Claimant's RFC. *See Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (describing raw medical data to include things like "MRIs, radiological studies, and X-rays"). Instead, as noted above, the ALJ used medical notes and the Claimant's own testimony of her daily tasks to determine her RFC. Therefore, the ALJ did not need to seek out additional medical expert opinions.

Although the ALJ found the PAMFs inconsistent with the rest of the record, she was under no obligation to seek out additional relevant evidence. *See* 20 C.F.R. § 404.1520b(b)(1) ("If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."). The ALJ relied on other relevant evidence in the Claimant's record to determine her disability. As noted above, this included other medical reports that the ALJ did find persuasive and the Claimant's own testimony. (*See* Doc. 11-3 at 25). Therefore, this Court finds the ALJ did not err in deciding not to seek out additional medical evidence to develop the record.

///

///

1

## IV.   CONCLUSION

2      Accordingly,

3      **IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

4      **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

5 accordingly.

6      Dated this 4th day of October, 2023.

7

8

9

10                                         James A. Teilborg
                                         Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28